# 2006 DTA 60

### TRIBUNAL DE CIRCUITO DE APELACIONES
### REGIÓN JUDICIAL DE CAROLINA

BORICUA ASPHALT, INC.; JACK DOE Y JANE DOE
Apelantes

v.

COMPAÑÍA FRANCO PANAMEÑA DE INVERSIONES, S.A.
Apelada

Núm. KLAN-04-01211

San Juan, Puerto Rico, a 21 de marzo de 2006

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Hernández Torres

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

La parte apelada, Compañía Franco-Panameña de Inversiones, S.A. ("*Franco-Panameña*"), es una corporación autorizada a hacer negocios en Puerto Rico dedicada, entre otras cosas, a actividades de financiamiento comercial.

Franco-Panameña es dueña de una finca de aproximadamente 67.21 cuerdas ubicada en el Barrio Lomas del Municipio de Loíza. La descripción de dicho inmueble es la siguiente:

"*RÚSTICA: Parcela de terreno radicada en el Barrio Lomas del término municipal de Loíza, Puerto Rico, con una cabida superficial de sesenta y siete cuerdas, con veintiuna centésimas de otra, equivalentes a veintiséis hectáreas, cuarenta y una áreas y sesenta y dos centiáreas colindando por el Norte, con Ciprián Pérez; por el Sur, con el Río Canovanillas; por el Este, con la parcela de veinte cuerdas vendidas a Don Feliciano Rodríguez Abreu; y por el Oeste, con Benito Sánchez Castro.*"

El 27 de julio de 1976, Franco-Panameña otorgó un contrato de opción para la venta de varias parcelas de la propiedad antes mencionada a favor de la corporación Central Mortgage Inc. ("*Central Mortgage*"). Central Mortgage se dedica al desarrollo de proyectos de construcción y deseaba adquirir las propiedades para desarrollarlas. Franco-Panameña concedió un término de 60 días a Central Mortgage para adquirir la propiedad.

Central Mortgage, sin embargo, no ejercitó la opción dentro del término pactado. Mediante carta de 18 de noviembre de 1976, Central Mortgage le solicitó a Franco-Panameña una extensión de su opción con nuevas condiciones. Franco-Panameña se negó a suscribir el nuevo acuerdo.

No obstante lo anterior, Central Mortgage otorgó a terceros varias opciones sobre las parcelas de la finca de Franco-Panameña en el Barrio Lomas de Loíza, que había propuesto adquirir de la apelada. Los funcionarios de Central Mortgage convencieron a los compradores de las opciones de que Franco-Panameña había autorizado la venta de las parcelas. Varios compradores procedieron a tomar posesión de las parcelas y a construir edificaciones.

Entre otras personas que adquirieron opciones de Central Mortgage, estaba el Sr. Ramón Díaz Guzmán. El Sr. Díaz Guzmán adquirió una opción sobre la parcela objeto de esta controversia, ubicada dentro de la finca de Franco-Panameña. La descripción de la parcela es la siguiente:

*"RÚSTICA: Parcela de terreno radicada en el Barrio Lomas del término municipal de Canóvanas, Puerto Rico, que se describe con el número, área y colindancias que se relacionan a continuación: NÚMERO DEL SOLAR: uno (1) SEGREGACIÓN PENDIENTE PARCELA DE SESENTISIETE (67) CUERDAS INSCRITA AL FOLIO DOSCIENTOS SIETE (207), TOMO OCHENTA (80) DE CANÓVANAS, FINCA NÚMERO CUATRO MIL TRESCIENTOS OCHENTIDOS (4,382). ÁREA DEL SOLAR: DOS HECTAREAS, CAURENTIDOS CENTIAREAS Y CIENTO CUARENTA MILIAREAS (20,042.140 M.C.) EN LINDES: POR EL NORTE, carretera estatal ciento ochenticinco (185), distancias de ciento sesentiseis metros trescientos veintiséis milímetros (166.326 mts.); por el SUR, Casiano Félix, distancia de trescientos doce metros con novecientos setentitres milímetros (312.973 mts.); por el ESTE, Milagros Marcano, distancia de ciento dos metros con treintiseis milímetros (102.036 mts.); y por el OESTE, con Benito Sánchez, distancia de ciento diecinueve metros con quinientos treinticuatro milímetros (119.534)."*

Franco-Panameña estaba ajena a la venta de opciones por parte de Central Mortgage. Central Mortgage tampoco contaba con la aprobación de la Administración de Reglamentos y Permisos ("*A.R.P.E.*") para la venta de las parcelas.

Como resultado de lo anterior, se presentaron acusaciones criminales contra el presidente de Central Mortgage, quien se declaró culpable de cinco cargos por tentativa de apropiación ilegal agravada.

Posteriormente, Franco-Panameña presentó una demanda de desahucio ante el Tribunal de Primera Instancia, Sala Superior de Carolina, contra las personas que habían adquirido opciones sobre su finca de Central Mortage y solicitó el lanzamiento de las personas de su propiedad, Caso Civil Núm. 82-0145. Para esta época, el Sr. Díaz Guzmán había vendido su opción a la parcela antes descrita al Sr. Juan Fontánez Ramos, quien fue uno de los demandados en el pleito de desahucio.

Los demandados contestaron la demanda de Franco-Panameña y alegaron que eran constructores de buena fe, ya que poseían un título sobre la propiedad. Mediante sentencia emitida el 6 de abril de 1990, el Tribunal concluyó que los demandados eran constructores de buena fe, ya que habían actuado abiertamente a ciencia y paciencia de Franco-Panameña. El Tribunal estimó que existía un conflicto de título y desestimó la acción de desahucio de Franco-Panameña, por entender que la controversia no podía ser adjudicada mediante el procedimiento sumario de desahucio. Este dictamen advino final y firme.

El 3 de agosto de 1996, el Sr. Juan Fontánez Ramos cedió a la apelante, Boricua Asphalt, Inc. (*"Boricua Asphalt"*), su derecho de opción a compra a la parcela antes descrita en el Barrio Lomas, por $40,000.00. Boricua Asphalt es una corporación autorizada a hacer negocios en Puerto Rico, dedicada, entre otras cosas, a la construcción y pavimentación de carreteras.

La cesión de opción sobre la parcela fue ratificada mediante la Escritura Núm. 33 otorgada el 9 de septiembre de 1997 ante el notario Iván Pagán Hernández. En la escritura de ratificación se hizo constar que el solar objeto de la cesión de opción no había sido segregado legalmente y que había un defecto en el tracto, dado

que no aparecía acreditada la facultad de los apoderados de Franco-Panameña para vender la opción.

Según las determinaciones del Tribunal de Primera Instancia, antes de ceder la opción, el Sr. Fontánez Ramos le aclaró a la apelante que lo que le estaba cediendo era una opción sobre una propiedad y no la propiedad en sí, y que existía un pleito donde se estaba cuestionando su título.

El 18 de septiembre de 1996, por medio de uno de sus oficiales, Boricua Asphalt solicitó al Departamento de Recursos Naturales un permiso de extracción para la parcela en cuestión. En la solicitud se representó falsamente que el permiso se solicitaba para la construcción de una vivienda, cuando el verdadero propósito era la construcción de una oficina y almacén para la apelante.

Posteriormente, el 28 de abril de 1997, Boricua Asphalt también solicitó a A.R.P.E. la segregación de la finca del Barrio Lomas, aduciendo que era dueña de la propiedad y que ésta recibiría un uso residencial. A.R.P. E. respondió que existían problemas en cuanto al tracto, la identidad del dueño registral de la finca, y que la opción que le había sido vendida estaba vencida.

El 1ro de diciembre de 1998, A.R.P.E. aprobó la segregación solicitada por Boricua Asphalt. Concluyó, a base de las representaciones de la apelante, que Boricua Asphalt era la dueña de la finca matriz cuya segregación se solicitaba.

A principios de diciembre de 2000, Boricua Asphalt comenzó la construcción de dos edificaciones en la parcela sobre la cual había adquirido la opción.

El 5 de diciembre de 2000, Franco-Panameña le advirtió que la propiedad le pertenecía y le requirió que detuviera los trabajos de construcción. Sin embargo, Boricua Asphalt continuó con los trabajos.

Luego de otras gestiones, el 13 de marzo de 2001, Franco-Panameña instó la presente acción de *injunction* contra Boricua Asphalt ante el Tribunal de Primera Instancia, Sala Superior de Carolina. La apelada solicitó al Tribunal que ordenara la paralización de la construcción que realizaba Boricua Asphalt, que se restituyera la propiedad a su condición original, y que se le indemnizara por los daños causados.

Boricua Asphalt contestó la demanda y negó las alegaciones. Alegó que era un poseedor de buena fe y que la sentencia previamente emitida el 6 de abril de 1990, en el caso 82-0145 de desahucio instado por Franco-Panameña, constituia cosa juzgada.

Trabada la controversia, Boricua Asphalt presentó una moción de desestimación basada en su contención de que la sentencia emitida en el caso de desahucio constituia cosa juzgada. Franco-Panameña se opuso.

Mediante resolución emitida el 10 de septiembre de 2002, el Tribunal de Primera Instancia, Sala Superior de Carolina, denegó la moción de desestimación de Boricua Asphalt.

Luego de otros trámites, el 8 de junio de 2004 se celebró la vista en su fondo. Durante la vista, Boricua Asphalt intentó demostrar que era un poseedor de buena fe.

A base de la prueba desfilada, el 8 de septiembre de 2004, el Tribunal de Primera Instancia emitió la sentencia apelada y declaró con lugar la demanda.

En su sentencia, el Tribunal de Primera Instancia determinó que Boricua Asphalt carecía de derecho sobre la propiedad. El Tribunal expresó:

*"Basado en los testimonios de la propia demandada, en unión a la prueba documental admitida en evidencia, es forzoso concluir que la parte demandada es un edificante de mala fe, y en su consecuencia, carece de derecho a solicitar indemnización alguna por las obras de construcción realizadas en la propiedad."*

Dicha condición surgió desde el momento de la negociación del contrato de cesión donde se le especificó el estado legal de la propiedad que en dicho momento era objeto de un litigio, continuando así con las falsas representaciones ante [el Departamento] de Recursos Naturales para la obtención del permiso de extracción y la ARPE para el permiso de segregación, y culminando con la participación como parte en un litigio que a todas luces reveló que carecía de derecho alguno. A pesar de todo ello y conociendo la identidad de la dueña de la finca, la demandada optó proceder con una construcción a sabiendas que lo hacía en terreno ajeno.

El Tribunal concluyó que Boricua Asphalt se había colocado en la *"posición de su cedente quien en términos legales no tenía nada que trasmitir, puesto que la opción a compra estaba vencida."*

El Tribunal le ordenó a Boricua Asphalt reponer la finca a su condición original, sin derecho a indemnización por la construcción, la que el Tribunal determinó había sido realizada de mala fe. Además, le impuso una condena de $2,000 por concepto de honorarios de abogado.

Insatisfecha con esta decisión, Boricua Asphalt acudió ante este Tribunal. Tras otros incidentes, incluyendo la presentación por la parte apelada, Compañía Franco Panameña, de un recurso de *certiorari* ante nuestro Tribunal Supremo (CC-2005-0030) solicitando la revisión de nuestro dictamen del 15 de noviembre de 2004, ordenando a los apelantes presentar una transcripción privada de la prueba, el que posteriormente fue declarado no ha lugar el 15 de abril de 2005, se presentó la Transcripción de Evidencia ordenada y el recurso quedó perfeccionado.

## II

En su recurso, Boricua Asphalt plantea que el Tribunal de Primera Instancia erró al no aplicar la doctrina de cosa juzgada o la doctrina de impedimento colateral por sentencia y al concluir que Boricua Asphalt era edificante de mala fe.

No existe controversia entre las partes que la propiedad en cuestión pertenece a Franco-Panameña y que la opción inicialmente otorgada a favor de Central Mortgage no se perfeccionó ni fue ejercitada.

La norma es que lo edificado en predios ajenos generalmente pertenece al dueño de la propiedad. Art. 294, 31 L.P.R.A. sec. 1161; *García Larrinua v. Lichtig,* 118 D.P.R. 120, 137 (1986).

El poseedor de buena fe tiene derecho a que se pague el costo de la construido. Art. 297, 31 L.P.R.A. sec. 1164; véanse, *Sucrs. Ramos Muñoz v. Apollo Hardware,* 110 D.P.R. 855, 859 (1981); *Castro Anguita v. Figueroa,* 103 D.P.R. 847, 851 (1975); *C.R.U.V. v. Román,* 100 D.P.R. 318, 322-323 (1971); *E.L.A. v. Tribunal Superior,* 94 D.P.R. 157, 162-163 (1967); *Cesaní Vargas v. Tribunal Superior,* 92 D.P.R. 239, 244-245 (1965); *Toro v. Mojica,* 79 D.P.R. 630, 633 (1956); *Berrocal v. Tribl. de Distrito,* 76 D.P.R. 38, 60-61 (1954); *Viera v. Arizmendi,* 74 D.P.R. 38, 42-43 (1952); *Echegaray v. Tribl. de Distrito,* 72 D.P.R. 445, 447-448 (1951).

También tiene derecho a retener la propiedad hasta que se le satisfagan los gastos útiles en ella invertidos. Art. 392, 31 L.P.R.A. sec. 1468; véanse, *Jiménez v. Reyes,* 146 D.P.R. 657, 663 (1998); *Marín v. Montijo,* 109 D.P.R. 268, 276-277 (1979); *Marchand v. Montes,* 78 D.P.R. 131, 139 (1955).

El que edifica de mala fe, pierde lo edificado o plantado sin derecho a indemnización. Art. 298, 31 L.P.R.A. sec. 1165; véanse, *A.T.P.R. v. Padín Santiago,* 104 D.P.R. 426, 428 (1975); *Cedó v. Laboy,* 79 D.P.R. 788, 793-794 (1956).

El dueño del terreno en el que se ha edificado de mala fe tiene la opción de exigir la demolición de la obra, reponiendo las cosas a su estado primitivo a costa del que edificó. Art. 299 L.P.R.A. sec. 1166; véase, *C.R.U.V. v. Román*, 100 D.P.R. a las págs. 322-323; véase, además, *Balzac v. Torres*, 68 D.P.R. 983, 987, n.2 (1948).

El Artículo 293 del Código Civil aclara que es poseedor de buena fe el que posee por virtud de un título suficiente y cuyos defectos son ignorados por el poseedor. 31 L.P.R.A. sec. 1146; *C. Tit. C. Parkside v. Edamorga, Inc.*, 161 D.P.R. \_\_\_ (2004), **2004 J.T.S. 80**, a la pág. 1,033.

Por su parte, el Artículo 1850 del Código Civil de Puerto Rico establece que la buena fe del poseedor *"consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella, y podía transmitir su dominio."* 31 L.P.R.A. sec. 5271.

En el caso de autos, según hemos visto, el Tribunal de Primera Instancia determinó que Boricua Asphalt no era un edificante de buena fe porque no había adquirido título sobre la propiedad, lo que le fue expresamente advertido por el Sr. Fontánez Ramos, al momento de la cesión de la opción. Tampoco se había autorizado segregación alguna del predio por parte de A.R.P.E. para la validez de este tipo de transacción. 23 L.P.R.A. sec. 71u; *Preciosas v. Del Lago v. Registrador,* 110 D.P.R. 802, 811-812 (1981).

En estas circunstancias, no estimamos que el Tribunal de Primera Instancia hubiera errado al concluir que Boricua Asphalt no tenía derecho a ser indemnizada por la construcción.

La norma, según se conoce, es que la evaluación de la prueba realizada por el juzgador de Primera Instancia merece deferencia y que sus determinaciones no serán modificadas por el Tribunal apelativo en ausencia de error manifiesto, pasión, prejuicio o parcialidad. *Argüello v. Argüello,* 155 D.P.R. \_\_\_ (2001); **2001 J.T.S. 127**, a la pág. 94; *Colón y otros v. K-Mart y otros*, 154 D.P.R. 510, 520 (2001); *Rolón v. Charlie Car Rental, Inc.,* 148 D.P.R. 420, 433 (1999); *Orta v. Padilla*, 137 D.P.R. 927, 937 (1995); *Rodríguez Oyola v. Machado Díaz,* 136 D.P.R. 250, 258 (1994); *Coop. de Seguros Múltiples de P.R. v. Lugo*, 136 D.P.R. 203, 208 (1994).

En la situación de autos, no hallamos base para intervenir con la sentencia apelada.

Boricua Asphalt alega que el Tribunal de Primera Instancia erró al no concluir que Franco-Panameña estaba impedida de cuestionar la buena fe de Boricua Asphalt, en vista de la sentencia emitida el 6 de abril de 1990, en el caso de desahucio instado por Franco-Panameña. Boricua Asphalt señala que, en esa ocasión, el Tribunal concluyó que el Sr. Fontánez Ramos y los otros adquirientes de las opciones eran poseedores de buena fe. La apelante alega que esta determinación constituye cosa juzgada.

Lo cierto es que la sentencia que invoca la parte apelante fue emitida en un desahucio. Este tipo de procedimiento especial, según se conoce, es uno naturaleza sumaria cuyo fin es recuperar la posesión y disfrute de una propiedad inmueble. *Turabo Ltd. Partnership v. Velardo Ortiz,* 130 D.P.R. 226, 234-235 (1992); *Mora Dev. Corp. v. Sandín*, 118 D.P.R. 733, 749-750 (1987); *García v. Brignoni et al.,* 22 D.P.R. 356, 366 (1915). Se trata de una acción posesoria en la que solamente cabe determinar el derecho a la posesión de un inmueble. *Turabo Ltd. Partnership v. Velardo Ortiz,* 130 D.P.R. a las págs. 234-235; *Escudero v. Mulero*, 63 D.P.R. 574, 582 (1944).

En vista de su carácter sumario, el Tribunal Supremo de Puerto Rico ha aclarado que en este tipo de caso resulta improcedente adjudicar conflictos de título. *C.R.U.V. v. Román*, 100 D.P.R. a la pág. 321; *Crespo v. Irizarry*, 71 D.P.R. 963, 968 (1950); *Correa v. Correa*, 32 D.P.R. 273, 276 (1923); *Hernández v. Rosado et al.,* 22 D.P.R. 387, 391-392 (1915).

Por la misma razón, las determinaciones emitidas en estos procedimientos, de ordinario, tampoco

constituyen cosa juzgada. Véanse, *Cesaní v. Carlo*, 86 D.P.R. 407, 411 (1962); *Cruz v. Bruno*, 76 D.P.R. 966, 972 (1954); *Virella v. Virella*, 23 D.P.R. 693, 698 (1916); *Banco Territorial y Agrícola v. Arvelo*, 7 D.P.R. 566, 571 (1904); pero véase, *Worldwide Food Dist., Inc. v. Colón et al.*, 133 D.P.R. 827, 838 (1993).

En cualquier caso, tampoco está claro que Boricua Asphalt pueda invocar que la sentencia emitida en el caso de desahucio presentado por Franco-Panameña contra el Sr. Fontánez Ramos constituya cosa juzgada. Para que una sentencia emitida en un caso anterior pueda constituir cosa juzgada sobre un asunto se requiere que concurran *"la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron."* Art. 1204 31 L.P.R.A. sec. 3343; *Méndez v. Fundación*, 165 D.P.R. ___ (2005), **2005 J.T.S. 106**, a la pág. 1,518; *Mun. de San Juan v. Bosque Real, S.E.*, 158 D.P.R. ___ (2003), **2003 J.T.S. 33**, a la pág. 634; *Fatach v. Triple S, Inc.*, 147 D.P.R. 882, 889 (1999); *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212, 219 (1992); *Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 304-305 (1987); *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753, 763 (1981); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 732 (1978); véase, además, 32 L.P.R.A. sec. 1793.

En la situación de autos, está claro que no existe identidad de partes, ya que Boricua Asphalt no participó en el litigio anterior.

Boricua Asphalt alega que ella adquirió su propiedad del Sr. Fontánez Ramos, quien fue parte en el litigio de desahucio. La apelante señala que se debe entender que ella se subrogó en los derechos del Sr. Fontánez Ramos y que ocupa su misma posición.

El Artículo 1204 del Código Civil de Puerto Rico aclara que *"se entiende que hay identidad de personas siempre que los litigantes en el segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas."* 31 L.P.R.A. sec. 3343; véase, *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. a la pág. 766; *P.I.P. v. C.E.E.*, 120 D.P.R. 580, 605 (1988); *Pol Sella v. Lugo Christian*, 107 D.P.R. 540, 549 (1978).

El Tribunal Supremo de Puerto Rico también ha aclarado que el requisito de identidad de personas se rige por la doctrina de mutualidad (*"privity"*). Esto es, las personas que hubieran sido partes en el pleito anterior deben gozar de una relación mutua con las partes en el litigio en el que se plantea la existencia de la cosa juzgada. *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. a las págs. 220-221; *P.I.P. v. C.E.E.*, 120 D.P.R. a la pág. 605; *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. a la pág. 766.

No pensamos, sin embargo, que Boricua Asphalt pueda beneficiarse de la sentencia emitida el 6 de abril de 1990, en el caso de desahucio. En esa ocasión, según hemos indicado, el Tribunal concluyó que los allí demandados habían procedido de buena fe, porque habían iniciado sus construcciones a ciencia y paciencia de Franco-Panameña, quien no había intervenido con ellos, a pesar de ser la dueña de la propiedad. Véase, Art. 1117 31 L.P.R.A. sec. 3167.

En el presente caso, sin embargo, lo que está en controversia fueron las obras realizadas por Boricua Asphalt en 2000, luego de que la apelante hubiera comprado la opción del Sr. Fontánez Ramos. Boricua Asphalt fue advertida por Franco-Panameña, el 5 de diciembre de 2000, que la apelada era la dueña de la propiedad y que no podía construir en el predio.

La norma, según lo dispone el Artículo 293 del Código Civil de Puerto Rico, es que la buena fe de una parte cesa desde el momento en que el poseedor conoce por sí mismo de los defectos del título. 31 L.P.R.A. sec. 1146.

En el presente caso, según hemos visto, el Tribunal de Primera Instancia determinó que Boricua Asphalt fue advertida por el Sr. Fontánez Ramos que él no gozaba de título de dominio sobre la propiedad, sino que lo que le vendió a Boricua Asphalt fue un derecho de opción, que resultó ser inexistente. Boricua Asphalt, más aún, fue oportunamente notificada por Franco-Panameña que no debía construir en el predio.

Aun si pudiéramos concluir que Boricua Asphalt entró a la propiedad como poseedora de buena fe, lo que es debatible, dicha condición cesó al intentar realizar construcciones adicionales en la propiedad, que sabía que no le pertenecía, en contra de las advertencias de la parte apelada.

La posición de Boricua Asphalt, por lo tanto, es diferente a la que ocupaba el Sr. Fontánez Ramos. No existe pues, mutualidad entre las partes envueltas, ni existe identidad en la materia de los dos litigios. En estas circunstancias, no procede la aplicación de la cosa juzgada. *Parrilla v. Rodríguez y otros,* 163 D.P.R. ___ (2004), **2004 J.T.S. 180**, a la pág. 427; *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. a la pág. 219; *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. a la pág. 766.

Por los fundamentos expresados, se confirma la sentencia apelada.

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria de Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones